FILED
2023 Sep-19  PM 02:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

| | | |
|---|---|---|
| **TERRY HUTTON,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| **COMMISSIONER, SOCIAL** | ) | **Case No.: 7:22-cv-932-AMM** |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OF DECISION**</u>

Plaintiff Terry Hutton brings this action pursuant to the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for a period of disability and disability insurance benefits ("benefits"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record, the court **AFFIRMS** the decision of the Commissioner.

## I.    Introduction

On March 20, 2020, Mr. Hutton protectively filed an application for benefits under Title II of the Act, alleging disability as of October 21, 2019. R. 15, 73–83. Mr. Hutton alleges disability due to learning problems, very limited comprehension and reading/writing, anxiety, depression, high blood pressure, diabetes, sleep apnea, GERD, PTSD, and manic episodes. R. 73–74. He has at least a high school education

and has past relevant work experience as a composite job of a forklift operator and a tire assembler. R. 29.

The Social Security Administration ("SSA") initially denied Mr. Hutton's application on September 22, 2020, and again denied it upon reconsideration on February 18, 2021. R. 15, 73–83, 86–108. On February 26, 2021, Mr. Hutton filed a request for a hearing before an Administrative Law Judge ("ALJ"). R. 123–24. That request was granted. R. 125–27, 156–60. Mr. Hutton received a telephone hearing before ALJ Sheila E. McDonald on October 7, 2021. R. 15, 37–72. On November 16, 2021, ALJ McDonald issued a decision, finding that Mr. Hutton was not disabled from October 21, 2019 through the date of her decision. R. 12–31. Mr. Hutton was fifty years old at the time of the ALJ decision. R. 29.

Mr. Hutton appealed to the Appeals Council, which denied his request for review on July 7, 2022. R. 1–3. After the Appeals Council denied Mr. Hutton's request for review, R. 1–3, the ALJ's decision became the final decision of the Commissioner and subject to district court review. On July 25, 2022, Mr. Hutton sought this court's review of the ALJ's decision. *See* Doc. 1.

## II.   The ALJ's Decision

The Act establishes a five-step test for the ALJ to determine disability. 20 C.F.R. § 404.1520. *First*, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work

activity is work activity that involves doing significant physical or mental activities."
20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). *Second*, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). Absent such impairment, the claimant may not claim disability. *Id*. *Third*, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity, which refers to the claimant's ability to work despite his impairments. 20 C.F.R. §§ 404.1520(e), 404.1545. In the *fourth* step, the ALJ determines whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ determines that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the

ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the *fifth* and final step. 20 C.F.R. § 404.1520(a)(4)(v). In this step, the ALJ must determine whether the claimant is able to perform any other work commensurate with his residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g)(1). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 404.1560(c).

The ALJ determined that Mr. Hutton meets the insured status requirements of the Act through December 31, 2024. R. 17. Next, the ALJ found that Mr. Hutton had not engaged in substantial gainful activity since October 21, 2019, his alleged onset date. R. 17. The ALJ decided that Mr. Hutton had the following severe impairment: major depressive disorder with psychosis. R. 18. The ALJ found that Mr. Hutton's diabetes mellitus, obesity, gastro esophageal reflex disease, and hyperlipidemia were "non-severe" because "[t]he medical record indicated" that they "were well controlled, non-symptomatic[,] or of less than a twelve-month duration." R. 18. Overall, the ALJ determined that Mr. Hutton did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" to support a finding of disability. R. 18.

The ALJ found that Mr. Hutton had the "residual functional capacity to perform a full range of work at all exertional levels" with certain non-exertional limitations. R. 22. The ALJ determined that Mr. Hutton: can understand, remember, and carry out simple instructions and tasks; can tolerate changes in the workplace that are infrequent and gradually introduced; would benefit from jobs that do not have strict production requirements; and can have occasional work-related interaction with supervisors and co-workers, but should have no interaction with the general public. R. 22.

According to the ALJ, Mr. Hutton was "unable to perform any past relevant work" as a composite job of a forklift operator and tire assembler. R. 29. According to the ALJ, Mr. Hutton was "a younger individual . . . on the alleged disability onset date," with "at least a high school education," as those terms are defined by the regulations. R. 29. The ALJ determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." R. 29. Because Mr. Hutton's "ability to perform work at all exertional levels has been compromised by non-exertional limitations," the ALJ enlisted a vocational expert to ascertain "the extent to which these limitations erode the occupational base of unskilled work at all exertional levels." R. 30. That expert testified that such individual "would be able to perform

the requirements of representative occupations such as floor waxer, . . . hand packager, . . . and hospital cleaner." R. 30, 68.

Based on these findings, the ALJ concluded that Mr. Hutton did not have a disability as defined in the Act, from October 21, 2019 through the date of the decision, November 16, 2021. R. 30–31. Mr. Hutton now challenges that decision.

## III. Standard of Review

This court's role in reviewing claims brought under the Act is a narrow one. The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. §§ 405(g), 1383(c)(3); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Act mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *see* 42 U.S.C. §§ 405(g), 1383(c)(3). This court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the record as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If the Commissioner's factual findings are supported by substantial evidence, they must be affirmed even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. No decision is automatic, for "[d]espite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## IV.  Discussion

Mr. Hutton alleges that the ALJ's decision should be reversed because "[t]he ALJ committed error by failing to properly consider the opinions of the claimant's treating physician and other examining medical professionals in accordance with the Social Security Regulations." Doc. 12 at 10.

As acknowledged by Mr. Hutton, the SSA has revised the applicable regulations. *See id.* at 16. The SSA's new regulations, promulgated in 2017, do away with the hierarchy of medical opinions and the treating source rule. 20 C.F.R. §

404.1520c(a). Under the new regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" for all claims filed on or after March 27, 2017. *Id*. And the ALJ "will articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions . . . in [the claimant's] case record." *Id*. at § 404.1520c(b).

When evaluating the persuasiveness of the opinions, the ALJ considers these factors: (1) supportability, i.e., how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)"; (2) consistency with the evidence; (3) relationship with the claimant, including the nature of the relationship, the length of the treatment relationship, the frequency of examinations, and the extent of the treatment relationship; (4) specialization; and (5) "[o]ther factors," such as the medical source's familiarity with the agency's policies and the evidence in the claim. *Id*. at § 404.1520c(c). It is not improper for an ALJ to consider a claimant's daily activities when evaluating a medical opinion. *See id*. at § 404.1520c(c)(5) (stating that an ALJ may consider any other relevant factors "that tend to support or contradict a medical opinion"). Supportability and consistency are the most important of the five factors, and an ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions . . . in [her] . . . decision." *Id*. at §

404.1520c(b)(2). The ALJ may explain how she considered the remaining factors, but she is not required to do so. *Id.*

After discussing Mr. Hutton's testimony and the medical evidence in the record, R. 22–24, the ALJ discussed medical opinions and prior administrative medical findings. R. 25–28. The ALJ specifically cited the applicable regulation: "When evaluating the persuasiveness of the medical opinions and prior administrative medical findings contained in a case record, we consider supportability, consistency, relationship with the claimant, specialization, and other factors in accordance with 20 CFR 404.1520(c)[.]" R. 25. The ALJ continued:

> I fully considered the medical opinions and prior administrative medical findings in this claim, but because I have the benefit of the entirety of the claimant's medical records and the additional testimony and evidence presented at the hearing, the undersigned rarely finds opinions to be simply "persuasive" or "not persuasive," either accepting them word-for-word or rejecting them altogether. There are almost always discrepancies, however small, between the specific opinions and limitations noted by a medical source or administrative medical finding, and the limitations reflected in the claimant's residual functional capacity. Any such discrepancies are based on my independent review, my consideration of the claimant's testimony and other evidence from the hearing, and all other evidence in the claim, some of which may not have been available to the source at the time of the expressed opinions. I have attempted to articulate the reasons for any such discrepancies throughout this decision.

R. 25.

Mr. Hutton argues that with respect to medical opinions, the ALJ's decision is "not supported by substantial evidence, nor [is it] based upon proper legal standards." Doc. 12 at 10. Mr. Hutton specifically discusses a psychological evaluation performed by Lee Stutts, PhD, *id.* at 11–12, a psychological consultative examination performed by Netria Hill, LPC, *id.* at 12–13, an evaluation by John R. Goff, PhD, *id.* at 13–14, and a Mental Medical Source Statement by Julie Van Sice, CRNP, *id.* at 14–15. As a threshold matter, the ALJ applied the correct regulations in her decision. *See* R. 25. She also specifically discussed, analyzed, and articulated reasons for her treatment of each medical opinion. *See* R. 26–28. The ALJ's decision is supported by substantial evidence, as discussed below with respect to each medical opinion at issue.

### A. Psychological Evaluation by Lee Stutts, PhD

Dr. Stutts performed a disability examination on August 19, 2020. R. 509–11. The report lists unspecified depressive disorder (provisional), unspecified schizophrenic spectrum or other psychotic disorder (provisional), and R/O schizoaffective disorder as diagnosis. R. 511. Dr. Stutts's summary states:

> Mr. Hutton is a 49 y/o man who presented as lethargic, likely sedated, and mildly agitated. He seemed confused at times but also as if he were being manipulative and attention seeking. He exhibited poor concentration and effort. He had trouble giving me basic history and facts today. Obviously, the circumstances of our meeting were not optimal, and I recommend a face to face meeting if

> further assessment is needed. He needs a psychiatric
> consult. Today's estimates of impairment are tentative.

R. 511.

Dr. Stutts then listed these impairment estimates:

| | |
|---|---|
| Simple tasks: | Moderate |
| Sustained attention: | Moderate to Marked |
| Social interactions/norm: | Moderate |
| Normal work demands: | Moderate to Marked |

R. 511.

The ALJ noted these diagnosis and impairment estimates and that Dr. Stutts's estimates of impairment were tentative. R. 26. The ALJ stated that: "Dr. Stutts specifically noted that the claimant appeared to be manipulating him and attention seeking and his effort during the examination was 'fair to poor'." R. 26. The ALJ stated that the results of this examination "were affected by multiple impediments," including poor internet signal, the participation and assistance of Mr. Hutton's fiancé, the misrepresentation of a schizophrenia diagnosis, the misrepresentation of Mr. Hutton's education history, the misrepresentation of the history of psychiatric issues, and the limited use of psychotropic medications. R. 26. The ALJ concluded that "[a]s a result of these inconsistencies . . . there is a clear indication that Dr. Stutt[s]'s caveat regarding the estimates of impairment are in fact based on incorrect or misleading information. As a result, I am not persuaded by the limitations noted by Dr. Stutts." R. 26–27.

Mr. Hutton argues that ALJ was "not persuaded by the assessment of Dr. Stutts" because of "erroneous findings by the ALJ" with respect to "diagnoses of mental health problems prior to March of 2020" and Mr. Hutton's high school graduation status. Doc. 12 at 12. As the Commissioner argued, however, "even if the ALJ made an error about the date of [Mr. Hutton's] diagnosis" (November 2019 versus March 2020) "that was not harmful, as the date [the ALJ] provided deviated by only a few months." Doc. 15 at 10. Also, although the record medical evidence states a date of onset of mental health symptoms of November 2019, R. 214, Mr. Hutton's attorney stated at the hearing that the first mental health treatment was in April of 2020. R. 58. It "remain[s] true" that Mr. Hutton "had not been treated for or diagnosed with mental impairments for 'years' as he claimed." *See* Doc. 15 at 10. Regarding Mr. Hutton's high school graduation status, the record includes differing statements as noted by the ALJ: "The claimant (or again perhaps his fiancé) represented to Dr. Stutts that he had not graduated high school and left school in the 9th grade but reported to medical professionals at Indian Rivers that he graduated high school." R. 26. The ALJ also heard testimony by Mr. Hutton about his education:

> Q:    Did you graduate from high school?
>
> A:    Well, I went to high school.
>
> Q:    Did you graduate, sir?

> A.   Almost. Yes, I guess, yeah.
>
> Q:   Well, I don't know the answer that (sic), sir. I'm just asking for clarification between what you just told me and [what] our records say. So I mean I'm just trying to verify that, sir. Do you recall graduating?
>
> A:   Yes. Green County High -- Eutaw High.
>
> Q:   And you graduated?
>
> A:   Yes, I did, yeah.

R. 42. Thus, the ALJ's analysis identified to genuine inconsistencies.

## B. Psychological Consultative Examination by Netria Hill, LPC

Mr. Hutton was "referred" to Netria Hill, LPC, "for psychological evaluation by the Alabama Department of Social Security Disability Determination service to assist in determination of benefits eligibility." R. 543. Mr. Hutton scored a fifteen out of a possible thirty on the mini mental status examination. R. 546. Ms. Hill's report lists "Schizoaffective Disorder; Depressive Type" as Mr. Hutton's diagnosis. R. 546. The report also states:

> The claimant's mental ability to perform the following work related activities:
>
> a)  Understand, retain and follow instructions: poor
>
> b)  Sustain attention to perform simple, repetitive tasks: poor
>
> c)  Relate to others, including fellow workers and supervisor: poor

d) Tolerate the stress/pressures associated with day
to day work activity: poor

e) If not, why not? Click here to enter text

Capability: The claimant's current symptoms of
Schizoaffective appear to limit his functioning in the
workplace. Should he be awarded benefits, he is not
capable of managing them independently due to the affect
his symptoms have on his daily behavior and limited
judgment and insight.

R. 546–47.

The ALJ found Ms. Hill's statement "not persuasive." R. 27. The ALJ stated

that "[i]n direct contrast to the medical evidence in the file, the claimant reported at

this examination that he had been experiencing psychological issues since 2000." R.

27. Mr. Hutton also reported that he had "no communication with his children,"

though the medical evidence indicates he sees his children every few months, and

once again reported not completing high school. R. 27. Regarding Ms. Hill's

diagnosis and functional assessments, the ALJ was "not persuaded . . . for a

multitude of reasons." R. 27. She explained:

First, once again, the claimant and his fiancé present
information to the examiner that is not consistent with the
other evidence in the file. Second, it is once again unclear
whether the examination was done with the claimant or
with substantial input from the claimant's fiancé, which
would unnecessarily affect an ability to properly examine
and diagnose the claimant. Finally, when prompted to
define why she chose 'poor' to assess the claimant's
ability to perform work activity, there is no narrative
discussion. Accordingly, without the benefit of the

> rationale for the assessment, the assessment itself is not
> probative and is of little evidentiary value.

R. 27.

Mr. Hutton argues that "[t]he ALJ found this evaluation to be not persuasive primarily because the claimant's girlfriend provided some of the history to the examiner and because 'the claimant was dressed appropriately and was well groomed[.]'" Doc. 12 at 13. This argument ignores the reasons given by the ALJ in evaluating Ms. Hill's assessment. Although both Ms. Hill and the ALJ remarked on Mr. Hutton's appearance, the ALJ did not list Mr. Hutton's appearance as a reason she was "not persuaded by this assessment." R. 27. Instead, the ALJ enumerated three specific reasons: inconsistent information, the possible input of Mr. Hutton's fiancé, and the lack of a "narrative discussion" from Ms. Hill providing a rationale for her assessment. R. 27.

### C. Evaluation by John R. Goff, PhD

Dr. Goff performed a confidential neuropsychological evaluation at the request of Mr. Hutton's attorney on August 23, 2021. R. 688–93. Dr. Goff concluded:

> Examination of the psychometric test data yields the
> following conclusions and/or inferences:
>
> 1. He appears to be functioning within the intellectually
>    disabled range of psychometric intelligence.

2. I think he has probably always functioned at a relatively low level but currently he appears to be exhibiting a decline from previous levels of function.

3. His psychotic symptomatology is present.

4. He apparently has problems with his moods and his behavior.

5. Diagnostic Impression:

   Schizoaffective Disorder Bipolar Type
   R/O Major Neurocognitive Disorder, NOS

   COMMENT

   The decline in his cognitive functioning along with the psychotic symptomatology suggests severe impairments in both areas. That is to say he is exhibiting severe impairments in his cognitive status and also in his psychiatric status.

R. 692–93.

The ALJ stated that Dr. Goff's consultative examination was "not persuasive." R. 27. First, the ALJ notes that Dr. Goff references medical records and an application for food stamps that are not included in the administrative record. R. 28. Second, the ALJ notes that Ms. Hutton's fiancé was present at the examination, filled out the intake paperwork, and represented herself as a nurse. R. 28. But, at the administrative hearing, she testified she was not a nurse and instead worked in medical billing and coding. R. 28. Third, Mr. Hutton again reported that he stopped school in ninth grade. R. 28. The ALJ stated that she was "not persuaded by the

assessment of Dr. Goff as the substantive basis upon which the examination was based was all provided by the claimant's fiancé." R. 28. The ALJ continued:

> Moreover, as noted above, there is additional information that was presented to Dr. Goff for his consideration that is not included within the current file. Moreover, I note that Dr. Goff administered intelligence testing at this examination and concluded that, based on the examination findings, "what we are seeing here is a decline from previous levels of function."[] However, there is no other testing available for comparison purposes. In addition to these issues, the narrative description from Dr. Goff contains language suggesting that perhaps his assumptions were guesstimates[.] . . . The speculative nature of Dr. Goff's conclusions along with the other issues noted above render this evaluation unpersuasive.

R. 28.

Mr. Hutton argues that the ALJ "erroneously state[d] that Dr. Goff referred to medical records that are not in the file, particularly, an application form for food stamps executed by his primary psychiatric counselor." Doc. 12 at 14. The Request for Medical Information Work Requirements form is present in the record. R. 214. However, the medical records referenced are not in the record. *See* R. 28. Mr. Hutton also argues that "there is nothing speculative about Dr. Goff's opinions in that they are based on his examination of the claimant's mental health records and his testing of Mr. Hutton and that the other reasons cited do not constitute genuine issues concerning his conclusions." Doc. 12 at 14. However, as argued by the

Commissioner, Mr. Hutton "makes no specific argument as to why the ALJ's reasons for finding the evidence was not persuasive were improper." Doc. 15 at 11.

### D. Mental Medical Source Statement by Julie Van Sice, CRNP

Nurse Practitioner Sice completed a mental medical source statement dated August 12, 2021. R. 681–85. Regarding mental abilities and aptitudes needed to do unskilled work, Nurse Practitioner Sice classified Mr. Hutton as follows:

- Seriously limited, but not precluded: Ask simple questions or request assistance. R. 683.

- Unable to meet competitive standards: Remember work-like procedure; Understand and remember very short and simple instructions; Carry out very short and simple instructions; Maintain regular attendance and be punctual within customary, usually strict tolerances; Make simple work-related decisions; Accept instructions and respond appropriately to criticism from supervisors; Get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; Be aware of normal hazards and take appropriate precautions. R. 683.

- No useful ability to function: Sustain an ordinary routine without special supervision; Work in coordination with or proximity to others without being unduly distracted; Complete a normal workday or workweek without interruptions from psychologically based symptoms; Perform at a consistent pace without an unreasonable number and length of rest periods; Respond appropriately to changes in a routine work setting; Deal with normal work stress. R. 683.

Nurse Practitioner Sice left blank the section inviting her to "[e]xplain limitations falling in the three most limited categories . . . and include the medical/clinical findings that support this assessment[.]" R. 683.

Regarding mental abilities and aptitudes needed to do semiskilled or skilled work, Nurse Practitioner Sice classified Mr. Hutton as follows:

- No useful ability to function: Understand and remember detailed instructions; Carry out detailed instructions; Set realistic goals or make plans independently of others; Deal with stress of semiskilled and skilled work. R. 684.

Nurse Practitioner Sice left blank the section inviting her to "[e]xplain limitations falling in the three most limited categories . . . and include the medical/clinical findings that support this assessment[.]" R. 684.

Regarding mental abilities and aptitude needed to do particular types of jobs, Nurse Practitioner Sice classified Mr. Hutton as follows:

- Seriously limited, but not precluded: Adhere to basic standards of neatness and cleanliness; Use public transportation. R. 684.

- Unable to meet competitive standards: Interact appropriately with the general public; Maintain socially appropriate behavior; Travel in unfamiliar place. R. 684.

Nurse Practitioner Sice left blank the section inviting her to "[e]xplain limitations falling in the three most limited categories . . . and include the medical/clinical findings that support this assessment[.]" R. 684.

The ALJ found that Nurse Practitioner Sice's statements were "not persuasive." R. 27. The ALJ explained:

> I would note at the outset that the forms provided by Ms. Van S[]ice were created by the claimant's attorney and consist of a checklist of symptomology and associated mental limitations seeking a checkmark. Such the

statements preceding are conclusory with limited probative value as these circled responses provide little narrative and are devoid of insight into the reasons behind the conclusions. Moreover, the treatment records of Ms. S[]ice do not provide sufficient detail upon which an actual comparison can be made as many consist of 3–4 sentences of summary with no real discussion. Of note, Ms. Van S[]ice indicates that the claimant is unable to meet competitive standards for remembering work-like procedures, understand and remember very short and simple instructions, maintain regular attendance, etc. Yet, the claimant rarely, if ever, is listed as a no show for his appointments and he generally calls to reschedule. The claimant notes that he helps his uncle on the farm toting water and doing other chores which suggests he is capable of following directions. While the claimant reports anger issues and an inability to interact with others, there are no instances of outright anger reported in his treatment records and he has been able to maintain a relationship with his fiancé/wife for a number of years which suggests his ability to interact is not as compromised as she suggests. For these reasons, I am not persuaded by this assessment.

R. 27 (internal citations omitted).

Mr. Hutton argues that the ALJ's criticism of the form used and her statement that Mr. Hutton is rarely listed as a no show for appointments and generally calls to reschedule are not "genuine issue[s] to render this assessment invalid." Doc. 12 at 15. However, the form completed by Nurse Practitioner Sice is conclusory, and she did not explain the limitations she identified. R. 683–84. Nor did she include any medical or clinical findings supporting her assessments. R. 683–84. Likewise, the

ALJ did not err by considering Mr. Hutton's attendance to his medical appointments when analyzing his ability to tend to work responsibilities. *See* R. 27.

*   *   *

The ALJ considered each of the medical opinions challenged by Mr. Hutton and discussed them in depth in her residual functional capacity analysis, as noted above. R. 26–28. In addition, the ALJ discussed each of the medical opinions in her analysis of listed impairments. R. 19 (Dr. Stutts); R. 19–20 (Ms. Hill); R. 20 (Nurse Practitioner Sice); R. 20–21 (Dr. Goff).

As an initial matter, the ALJ articulated how persuasive she found the medical opinions, as required by the regulations. *See* 20 C.F.R. § 404.1520c(b). The ALJ considered the medical opinions "in accordance with the requirements of 20 CFR 404.1520c." R. 22. The ALJ wrote that:

> The . . . residual functional capacity assessment is supported by the claimant's records that confirm that, as of his alleged disability onset date, he had the residual functional capacity to perform work activities consistent with the . . . residual functional capacity. The residual functional capacity limits the claimant to a range of non-exertional [work] limitations . . . which is consistent with the claimant's complaints of [major depressive disorder] related symptoms. After a thorough review of the evidence of record, the claimant's allegations and testimony, forms completed at the request of the Social Security Administration, the objective medical findings[,] medical opinions, and other relevant evidence, I find that the claimant is capable of performing work consistent with the residual functional capacity established in this Decision.

21

R. 24–25. The ALJ included in her residual functional capacity limitations to simple instructions and tasks; infrequent and gradually-introduced workplace changes; production requirements; and interaction with supervisors, co-workers, and the general public. R. 22.

The ALJ applied the correct legal standards in evaluating the medical opinions, and substantial evidence supports her findings. R. 26–28. Mr. Hutton has not shown that the ALJ erred in her consideration of medical opinions from Dr. Stutts, Ms. Hill, Dr. Goff, or Nurse Practitioner Sice.

## V.     Conclusion

Upon review of the administrative record, the court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** this 19th day of September, 2023.



_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE